### HOTEL WISCONSIN REALTY CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 4417.

Circuit Court of Appeals, Seventh Circuit.
March 5, 1931.

Frank Hormuth, of Milwaukee, Wis., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., J. Louis Monarch and John H. McEvers, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and De Witt Evans, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above).

■ *Waiver of Statute of Limitations.* Petitioner's contention that the tax claims were barred by the statute of limitations and such bar was not lifted by the waivers it signed, must be rejected upon the authority of Burnet v. Chicago Railway Equipment Co., 282 U. S. 295, 51 S. Ct. 137, 75 L. Ed. ——, decided Jan. 5, 1931; Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. ——, decided Jan. 5, 1931; Florsheim Bros. Co. v. United States, 280 U. S. 453, 50 S. Ct. 215, 74 L. Ed. 542; Neiman-Marcus Co. v. Lucas (App. D. C.) 41 F.(2d) 300.

■ *Losses.* Petitioner asserted that it lost $12,093.85, the value of its liquor on hand, when the War Prohibition Act went into effect July 1, 1919 (40 Stat. 1046). As to this issue, the Board of Tax Appeals found:

"On July 1, 1919, petitioner had on hand a quantity of liquor which had been purchased at a cost of $12,093.85 for the purpose of resale in the bar. The War Prohibition Act prohibited the sale by petitioner of its liquor for beverage purposes after June 30, 1919. Petitioner's directors were afraid to keep the liquor on the hotel premises and immediately disposed of all of it by giving it to any individuals who would carry it off the hotel premises. Petitioner received no cash consideration in return for its liquor thus disposed of. Respondent disallowed the claimed deduction in the amount of $12,093.85 as a loss sustained upon the said disposition of the liquor purchased for sale in petitioner's bar."

The language of the court in Clarke v. Haberle Brewing Co., 280 U. S. 384, 50 S. Ct. 155, 74 L. Ed. 498, and in Renziehausen v. Lucas, 280 U. S. 387, 50 S. Ct. 156, 74 L. Ed. 501, is sufficiently broad to exclude petitioner's alleged loss.

But in the instant case there exists another reason for the disallowance of this item as a loss. The evidence fails to show any loss. Petitioner gave away this liquor, and it cannot deduct its gifts as losses. It was not required to confiscate or give away its liquor on July 1, 1919. It could have transported it to a bonded warehouse and later sold it for certain limited purposes which were lawful. Instead of so doing, it chose to give the liquor away, and therefore, is not now in a position to assert a loss arising out of the transaction.

■ Petitioner also asserted a loss covering the period of January 31, 1918, to January 16, 1920, of $270,905.80 due to "the destruction of an intangible asset" arising out of the enactment of the Eighteenth Amendment and the National Prohibition Act (27 USCA). In support of its claim, proof was received which showed an average net profit of $32,000 a year for several years prior to July 1, 1919, derived from the operation of the bar. Petitioner also relied upon the policy of the state of Wisconsin as evidenced by the statutes which were in force, and which limited the number of saloon licenses issuable by a municipality. It argued therefrom that petitioner's license to operate a saloon was in the nature of a vested right, which was destroyed by the Eighteenth Amendment. The value of this right, thus lost, based upon an experience covering five years, was approximately $270,000.

We find nothing in the Federal statutes authorizing the allowance of such loss. Petitioner's saloon license was never a vested right. It could have been terminated any year by state legislation. Moreover, the city of Milwaukee was not required to renew peti-

tioner's license at the end of any year. The license was nontransferable. Petitioner's license was hardly an asset at all. Moreover, petitioner's loss arose from the destruction of its business rather than the loss of its license. The license *per se* resulted in no profits. The business which arose as a result of its license to conduct a saloon made possible petitioner's profits. Upon such a fact foundation, the language of the court in Clarke v. Haberle Brewing Co., 280 U. S. 384, 386, 50 S. Ct. 155, 156, 74 L. Ed. 498, is applicable:

"In our opinion the words now used cannot be extended to cover the loss in this case and it is needless to speculate as to what other cases it might include. It seems to us plain without help from Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205, that when a business is extinguished as noxious under the Constitution the owners cannot demand compensation from the Government, or a partial compensation in the form of an abatement of taxes otherwise due. It seems to us no less plain that Congress cannot be taken to have intended such a partial compensation to be provided for by the words 'exhaustion' or 'obsolescence.' Neither word is apt to describe termination by law as an evil of a business otherwise flourishing, and neither becomes more applicable because the death is lingering rather than instantaneous."

The recent case of Loewers Gambrinus Brewery Co. v. Anderson, Collector, 282 U. S. —, 51 S. Ct. 260, 75 L. Ed. —, decided February 24, 1931, stresses the necessity of the loss being to tangible as distinguished from intangible assets, before a taxpayer may be credited with a loss traceable to the enactment of the Eighteenth Amendment. The Clarke Case, supra, dealt with exhaustion or impairment of good will, whereas the Loewers Company Case dealt with injury to, or obsolescence of, tangible property; viz., the physical assets of a brewery. Petitioner's license was more intangible than its good will.

In the present case, the hotel company asserted a loss to its business due to the loss of its saloon license. The Clarke Case governs this issue.

■ *Invested Capital.* Petitioner complained of two rulings of the Board of Tax Appeals, which reduced the amount of its invested capital. (a) It asserted that it purchased the hotel equipment, appraised at $225,000, for $132,915.32. In 1920, it "set up on its books as paid-in surplus the sum of $92,039.18 representing the difference between the actual cost and the appraised value of the proper-

ty." The Board refused to include this sum in petitioner's invested capital. (b) It asserted the Commissioner erroneously reduced petitioner's invested capital for three successive years by the pro rata amount of its income taxes assessed for the preceding years.

(a) Upon the authority of La Belle Iron Works v. U. S., 256 U. S. 377, 389, 41 S. Ct. 528, 65 L. Ed. 998, the ruling of the Board of Tax Appeals must be sustained as to contention (a).

■ (b) Whether a taxpayer may exclude from capital invested a pro rata amount of the income taxes for the year before is no longer an open question. Treasury Regulations 45, Art. 845; Fawcus Machine Co. v. United States, 282 U. S. 375, 51 S. Ct. 144, 75 L. Ed. —, January 5, 1931; United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347; Bogle & Co. v. Commissioner, (C. C. A.) 26 F.(2d) 771. The Board of Tax Appeals did not err in reducing petitioner's invested capital for the years 1919, 1920, and 1921 by excluding therefrom a pro rata amount of the federal income taxes for the preceding years.

The order of the Board of Tax Appeals is affirmed.