## STEELE–WEDELES CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4758.

Circuit Court of Appeals, Seventh Circuit.

Feb. 28, 1933.

Donald Horne, of Washington, D. C., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and A. H. Conner and John MacC. Hudson, Sp. Assts. to Atty. Gen., for respondent.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Petitioner seeks to reverse a decision of the United States Board of Tax Appeals fixing against petitioner a deficiency in income and excess profits taxes for the year 1918 of $15,398.23. The contention is that the board should have included in invested capital, (1) $125,000, the difference between the cash expended for a certain long time leasehold and what is claimed to have been its real market value when so purchased in 1907 and at all times thereafter; (2) $119,873.02, being the cost of permanent improvements placed upon the leasehold by a tenant; and (3) $49,153.12 determined by the Commissioner to be the amount of depreciation of petitioner's invested capital.

Petitioner in 1907 acquired by assignment a certain 99-year leasehold on Chicago realty, paying for the same $25,000 in cash, upon which it was bound to pay $5,000 annually as rental. As part of the consideration for such assignment, petitioner agreed to construct upon the premises a building costing $200,000, and preliminarily to the completion of the assignment, a tenant of petitioner agreed to sublet the basement and first floor of, the building and to pay the cost of the construction of that part of the structure.

Petitioner constructed the building at a cost of $200,000 and the tenant paid for its share of the improvement as contracted, at a cost to it of $119,873.02. The latter, in accordance with its agreement, built certain tracks and connections which greatly benefited petitioner in its transportation problems. The sum of $200,000, representing petitioner's cost of construction, was, with the approval of the board, included in its invested capital account. The sum of $119,873.02, expended by the tenant, was denied inclusion.

Petitioner claims that the leasehold's market value at the time it was purchased was not $25,000, the sum paid therefor, but in fact $150,000, and that the additional $125,000 should have been added to its invested capital.

Section 326 of the Revenue Act of 1918 (40 Stat. 1092) defines invested capital as the "actual cash paid in" and "actual value of tangible property, * * * bona fide paid in for stock" "but in no case to exceed the par value" of the stock, "unless the cash value" "at the time paid in is shown to have been clearly in excess of such par value, in which case such excess shall be treated as paid-in surplus and included in invested capital." In addition, the taxpayer may include also its paid in or earned surplus. Other provisions of the acts are not pertinent. There was, in the present case, no property paid in for stock.

The statutory definition patently limits invested capital to actual cash invested, or to actual cash market value of property exchanged for shares of stock and actual additions in cash or its equivalent by earned or paid in surplus. All other elements are excluded. Congress in its attempt to collect revenue for war purposes from the excess profits of corporations evidently intended to exclude the multifarious investigations of fact entailed by a provision recognizing other bases for valuation than contributions in cash. Thus the Supreme Court in La Belle Iron Works v. United States, 256 U. S. 377, 389, 41 S. Ct. 528, 531, 65 L. Ed. 998, said: "It is clear enough that Congress adopted the basis of 'invested capital' measured according to actual contributions made for stock or shares and actual accessions in the way of surplus, valuing them according to actual and bona fide transactions and by valuations obtaining at the time of acquisition not only in order to confine the capital, the income from which was to be in part exempted from the burden of this special tax, to something approximately representative of the risks accepted by the investors in embarking their means in the enterprise, but also in order to adopt tests that would enable returns to be more easily checked by examination of records, and make them less liable to inflation than if a more liberal meaning of 'capital and surplus' had been adopted; thus avoiding the necessity of employing a special corps of valuation experts to grapple with the many difficult problems that would have ensued had general market values been adopted as the criteria."

Whether in a given case property should be carried in the capital account at market value rather than at cost may be a matter of judgment, depending upon special circumstances and the local law. Such uncertain measure Congress obviously intended to exclude. So, whatever may be the argument as to proper rules in the accounting profes-

sion, Congress, by valid act, defined the term in words susceptible of no ambiguity or uncertainty. It plainly excluded the unearned increment resulting from a good bargain in purchasing property for less than its cash market value. In the case cited, the Supreme Court refused to allow $1,000,000 to be added to the invested capital in iron ore lands, even though it was shown that by exploration and development the property had such additional value over and above the actual cash invested therein. Thus the court said (page 390 of 256 U. S., 41 S. Ct. 528, 531): "In view of the special language employed in section 207, obviously for the purpose of avoiding appreciated valuations of assets over and above cost, the argument that such value is as real as cost value, and that in the terminology of corporation and partnership accounting 'capital and surplus' mean merely the excess of all assets at actual values over outstanding liabilities, and 'surplus' means the intrinsic value of all assets over and above outstanding liabilities plus par of the stock, is beside the mark. Nor has the distinction between capital and income, discussed in Doyle v. Mitchell Bros. Co., 247 U. S. 179, 187, 62 L. Ed. 1054, 1060, 38 S. Ct. 467, * * * any proper bearing upon the questions here presented."

The court continued (page 389 of 256 U. S., 41 S. Ct. 528, 531): "It is clear that clauses (1) and (2) refer to actual contributions of cash or of tangible property at its cash value contributed in exchange for stock or shares specifically issued for it; and that neither these clauses, nor clause (3) which relates to surplus, can be construed as including within the definition of invested capital any marking up of the valuation of assets upon the books to correspond with increase in market value, or any paper transaction by which new shares are issued in exchange for old ones in the same corporation, but which is not in substance and effect a new acquisition of capital property by the company."

■ It follows conclusively that petitioner was rightfully denied anything additional to its original actual investment, plus its cash additions thereto. That it made a good bargain and that there may have been an unearned increment present at the time of the purchase or by way of appreciation later are facts wholly beyond anything regarded as material by Congress.

The foregoing announcement clearly disposes likewise of the contention that the sum contributed by the tenant should be added to invested capital. Such contribution moved not at all from petitioner, and, if the result was to increase the value of the latter's property, such increase was purely appreciation in value, expressly disapproved as invested capital in the case of La Belle Iron Works v. U. S., supra. See, also, Golden Cycle Corp. v. Com'r of Int. Rev., 51 F.(2d) 927 (C. C. A. 10th).

■ The action of the Commissioner in deducting $49,153.12 from invested capital as depreciation was not attacked by petitioner in its claim before the Board of Tax Appeals. At the hearing, however, leave was prayed so to amend as to include an attack upon this item. This motion the board denied as made too late. Apparently such action was not an abuse of discretion, for the record discloses that the Commissioner's determination of invested capital was made prior to May 28, 1926, when petitioner applied for redetermination. Almost a year later, during the hearing, petitioner sought to amend to attack this item. We believe denial under these circumstances within the discretion of the board. Metropolitan Business College v. Blair, 24 F.(2d) 176 (C. C. A. 7th); Strother v. Commissioner, 55 F.(2d) 626, 631 (C. C. A. 4th); Boggs & Buhl v. Commissioner, 34 F.(2d) 859 (C. C. A. 3d); O'Meara v. Commissioner, 34 F.(2d) 390 (C. C. A. 10th); Excelsior Motor Mfg. & Supply Co. v. Commissioner, 43 F.(2d) 968 (C. C. A. 7th).

It follows that the decision of the Board of Tax Appeals should be and is affirmed.