## CONSOLIDATED COKE CO. v. COMMIS-SIONER OF INTERNAL REVENUE.

### No. 5225.

Circuit Court of Appeals, Third Circuit.
March 21, 1934.

Thomas Watson, of Pittsburgh, Pa., for petitioner.

Andrew D. Sharpe, of Washington, D. C., for respondent.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

This case involves deficiency assessments in income and profits taxes of the petitioner, the Consolidated Coke Company, in the sums of $256,138.30 for the year 1917, and $13,-704.46 for the year 1918. The Board of Tax Appeals refused to disturb the determination of the Commissioner of Internal Revenue. 25 B. T. A. 345. The petitioner brought this petition to review the Board's order of redetermination.

In August, 1914, the Connellsville Coke Company, a corporation of the commonwealth of Pennsylvania, required money to finance its operations. The company carried on its books assets in the amount of $3,711,775.64 and liabilities in the amount of $2,011,938.-70, which were secured by a mortgage on the properties of the company; a second mortgage in the amount of $280,000 and promissory notes that had a face value of between $500,000 and $600,000. Its majority stockholders were the indorsers of more than $500,000 of these notes.

There had been several unsuccessful attempts to refinance the company by assessing its stockholders and selling to them bonds secured by a second mortgage. Whereupon, I. W. Semans, George Whyel, and Harry Whyel, three of the stockholders who had indorsed a large part of the notes, proposed

that the company give them the right to purchase its property. They obtained a thirty-day option which provided that they might purchase the property, subject to incumbrances, for a price equal to the total indebtedness of the company. If the option was exercised, the purchasers were required to discharge the company's indebtedness within ninety days and thereupon the company would convey its property.

George Whyel, the president and a director of the Connellsville Company at the time the option was executed, informed the other directors and stockholders of the Connellsville Company that it was the intention of the purchasers to organize a new corporation, assign the option to it, and to permit the stockholders of the Connellsville Company to subscribe to its stock in proportion to their holdings in the old company.

Accordingly, the Consolidated Coke Company, the petitioner, was organized with a capital of $5,000 divided into 50 shares of stock, each of a par value of $100. On September 24, 1914, Semans and the Whyels accepted the offer in the option to purchase the Connellsville Company's property and assigned their rights under the contract to the Consolidated Coke Company.

The petitioner increased its capital stock to $100,000, divided into 1,000 shares of $100 each, but no new certificates were issued until June 1, 1915. The 50 shares originally issued for the purpose of incorporation were assigned to Semans and the Whyels on October 28, 1914.

On October 12, 1914, the directors of the petitioner passed a resolution to issue bonds in the amount of $600,000 to be secured by a mortgage on the property to be acquired from the Connellsville Company in order that the petitioner might be properly financed. This plan was not carried out.

The Connellsville Company conveyed all of its property and assets to the petitioner on December 19, 1914. At that time the petitioner had not discharged the indebtedness of the Connellsville Company as the contract required, but it assumed liability for them. The petitioner entered the assets so conveyed on its books at a value of $2,011,938.70, an amount equal to the liabilities of the Connellsville Company. This valuation of the assets was arbitrary and was not based on an appraisal. The petitioner did not adjust its books to reflect the value of the assets as they were carried on the books of the Connellsville Company until October 31, 1917.

George Whyel, Harry Whyel, and Semans, who owned 942, 755, and 1,271 shares, respectively, of the Connellsville Company subscribed for 166½, 153, and 2 shares, respectively, of the petitioner. They made energetic efforts to induce the other stockholders of the Connellsville Company to subscribe, in proportion to their ownership, to the shares of the petitioner. Of the forty-seven stockholders of the Connellsville Company, twenty-two, who owned approximately 31 per centum of the stock, declined to subscribe for the petitioner's stock; seven, who owned approximately 34 per centum, subscribed for approximately 10 per centum, fifteen, who owned 34 per centum, subscribed for approximately 89 per centum, and three, who owned less than 1 per centum, subscribed for their proportionate share of the petitioner's stock. The Board found that the stockholders who did not subscribe to the shares in the petitioner were indifferent to their opportunity and made no objection to others acquiring them, but substantially all of the stock of the petitioner was subscribed to by stockholders in the Connellsville Company. The money paid in for the stock was used by the petitioner for working capital.

The Commissioner of Internal Revenue determined that the property acquired by the petitioner from the Connellsville Company should be included in the petitioner's invested capital on the basis of its cost of $2,011,938.70 to the petitioner and the excess value of $2,137,475.83, as stipulated by the parties, over the cost to the petitioner was not property "paid in for stock" by the stockholders of the petitioner, under section 207 of the Revenue Act of 1917 (40 Stat. 306) and section 326 of the Revenue Act of 1918 (40 Stat. 1092). The Board of Tax Appeals sustained the determination of the Commissioner and found that the petitioner acquired the assets of the Connellsville Company by purchase and held that in such a case, the cost of the property is the measure of the investment. La Belle Iron Works v. United States, 256 U. S. 377, 41 S. Ct. 528, 530, 65 L. Ed. 998.

Section 207 (a) of the Revenue Act of 1917 and section 326 (a) of the Act of 1918 provide substantially, that the "invested capital" of a corporation means "(1) Actual cash bona fide paid in for stock or shares"; (2) the actual cash value of tangible property other than cash, paid in for stock, in excess of the par value of the stock issued therefor, the excess being treated as

paid-in surplus; "(3) paid in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year."

The petitioner contends that it is entitled under the second clause of the statute, or, if not, under the third clause, to include in its invested capital the excess value of the assets acquired when it obtained the Connellsville Company's assets. It relies in its argument principally on clause (3) as interpreted by Article 837 of Treasury Regulations 45, which provides:

"Surplus and undivided profits; paid-in surplus.—Where it is shown by evidence satisfactory to the Commissioner that tangible property has been paid in by a stockholder to a corporation as a gift or at a value definitely known or accurately ascertainable as of the date of such payment clearly and substantially in excess of the cash or other consideration paid by the corporation therefor, then the amount of the excess shall be deemed to be paid-in surplus."

■ Clearly, there is no merit in the contention that the Connellsville Company's property was paid in for stock of the petitioner as required by clause (2) of section 207 (a). The facts before the Board do not support the petitioner in this. In the La Belle Iron Works Case, supra, the Supreme Court said at page 389 of its opinion in 256 U. S., 41 S. Ct. 528, 531, that clause (2) referred to actual contributions of cash or of tangible property for stocks or shares specifically issued for it.

But the petitioner asserts that the facts of this case fall directly within the meaning of clause (3) and particularly points to Article 837 of the Treasury Regulations.

■ It has been consistently recognized that the Congress intended the meaning of "invested capital" to be limited. La Belle Iron Works v. United States, supra; Hotel Wisconsin Realty Company v. Commissioner, 47 F.(2d) 842 (C. C. A. 7); Steele-Wedeles Company v. Commissioner, 63 F.(2d) 541 (C. C. A. 7); Appeal of Steinbach Company, 3 B. T. A. 348; Keystone Wood Products Company v. Commissioner, 19 B. T. A. 1116. The increment resulting from a good bargain or revaluation is not within the meaning of the statute. "The provision of clause (3) that includes 'paid in or earned surplus and undivided profits used or employed in the business' recognizes that in some cases contributions are received from stockholders in money or its equivalent for the specific purpose of creating an actual excess capital over and above the par value of the stock." La Belle Iron Works v. United States, supra.

In view of the restricted meaning placed by the Congress upon "invested capital," the finding of the Board that the contract to purchase assets acquired by the petitioner in September, 1914, and the circumstances surrounding it, establish that it was not paid in to the petitioner as a surplus within the meaning of clause (3).

The financial position of the Connellsville Company was serious, and, after several attempts at reorganization, three of its stockholders and officers who were heavily involved took the situation in their hands. They formed the petitioner and assigned it the contract to purchase the assets of the Connellsville Company. The petitioner's stockholders were substantially different from those of the old company. The assets that were purchased on the basis of the assumption of the liabilities of the Connellsville Company were entered on the petitioner's books at cost. Money was necessary in order that the assets might be used by the petitioner and a sum was raised by selling stock to stockholders who owned stock in the Connellsville Company in different proportions; while a substantial number of their fellows refused to join them. Under these and the other circumstances, we cannot say that the Board's finding was erroneous.

■ The petitioner also contends that it was error for the Board to have refused to admit two resolutions of the petitioner's board of directors.

These resolutions refer to a proposed plan of reorganizing the Connellsville Company by its stockholders through the medium of the newly incorporated petitioner. The offer of this evidence was refused by the Board for the reason that the resolutions are not the originals, but purported copies. The originals were voluntarily and (although the acts were doubtless done in good faith as the Board itself stated) deliberately destroyed. This was done by petitioner's president and its counsel in December, 1927, after the notice of deficiency in this proceeding had been initiated. They testified that they had made and pasted the copies in the minute book to supply certain illegible portions of originals. The Board was justified under the circumstances in not accepting the explanation. Wigmore on Evidence (2d Ed.) § 1198.

■ It also follows that the Board did not err in holding that the basis for computing

depletion and depreciation of the property in 1917 and 1918 is its cost [section 12 (a) second (b), Revenue Act of 1916 (39 Stat. 768) and section 234 (a) (9), Revenue Act of 1918 (40 Stat. 1078)] and that the basis for determining gain or loss on a sale of the property in 1919 is cost [section 202 (a) (2), Revenue Act of 1918 (40 Stat. 1060)].

The order of the Board of Tax Appeals is affirmed.