**COMMISSIONER OF INTERNAL REVENUE v. FIFTH AVENUE BANK OF NEW YORK.**

No. 5976.

Circuit Court of Appeals, Third Circuit.

June 16, 1936.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and F. E. Youngman, Sp. Assts. to the Atty. Gen., for petitioner.

James L. Dohr, of New York City (Richard T. Greene and Daniel S. Murphy, both of New York City, of counsel), for respondent.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In this income tax case it appears that Bell owned 10,386 shares of stock in Lederle Antitoxin Laboratories (hereafter called Antitoxin), having a cost basis of $90,384.85. A reorganization agreement was drawn up between Antitoxin and American Cyanamid Company (hereafter called Cyanamid) whereby Antitoxin would convey all of its assets to Cyanamid or its nominee for 64,500 shares of Cyanamid class B common and 75,000 nonvoting preferred of the new corporation, Lederle Laboratories, Inc. (hereafter called Laboratories). Cyanamid formed Laboratories, to which Antitoxin transferred all of its assets and received from each Laboratories and Cyanamid the promised stock. Cyanamid had conveyed all of the stock of Davis and Gleck, a subsidiary, to Laboratories and its rights under the contract with Antitoxin to the assets of Antitoxin for all the shares (1,000) of Laboratories common stock, thereby gaining control of the latter. Amalgamated Phosphate Company, also a subsidiary of Cyanamid, offered Antitoxin and its stockholders to buy all of Cyanamid class B for $31 a share. Ninety-nine per cent of Antitoxin stockholders sold under this option.

Bell received 1,897.34 shares of Cyanamid B and 2,206.21 of Laboratories preferred as compensation for services in effecting the reorganization, and 7,880.66 Cyanamid B and 9,163.79 shares of Laboratories preferred in exchange for his 10,386 shares of Antitoxin, making a total of 9,778 Cyanamid B and 11,370 Laboratories preferred.

Bell also received $12.84 for fractional shares. In his income tax return he reported no capital gain or income from the reorganization, but did report a capital gain of $249,956.37 resulting from his sale of Cyanamid B to Amalgamated Phosphate for $303,118. He obtained this figure by allocating $53,161.63 of the $90,384.85 cost basis to Cyanamid B and the rest to Laboratories preferred.

In January, 1933, the Commissioner notified the Bank, executor of Bell's estate, of a deficiency of $6,645.22 on the theory that the reorganization was taxable in part. The Bank petitioned to the Board, claiming overpayment through overvaluation of Laboratories preferred. In January, 1934, the Commissioner filed an amended answer by leave of the Board, claiming that the entire transaction was taxable, and asked the Board to find a deficiency of $21,887.12. In December, 1934, the Board filed its opinion, declaring the transaction was stock for stock, that Cyanamid and Laboratories were parties to the reorganization, and that the reorganization was therefore within the statute and no gain or loss could be found. They also found that Bell had received some stock for services which should have been reported as ordinary income. However, since the resultant tax might be greater than the deficiency determined by the Commissioner ($6,645.22), and since the amended answer asking for an increased deficiency was not based upon these facts, but upon the assumption that the transaction was a sale, and due to the Commissioner's failure to ask during the hearing for an increased deficiency on these facts, the Board would not redetermine the deficiency. Judgment was entered under Rule 50, which allowed for a recomputation of the tax setting a maximum limit of $6,645.22.

In January, 1935, the Commissioner filed his proposed recomputation setting the deficiency at $6,645.22, in which the Bank acquiesced in February. A motion for reconsideration, revision, and review filed by the Commissioner was denied so far as it asked for review. On April 11, six days before the final hearing, the Commissioner filed a petition to file a second amended answer asking for an increased deficiency on the ground that Bell had received the stock as compensation.

In the Board's opinion of June 6, 1935, they affirmed their first decision that this was a nontaxable reorganization. They also held that the first amended answer could not support an increased deficiency on a totally different basis, and the petition to file a second amended answer was denied as not having been made in due time.

The first question is whether both Cyanamid and Laboratories were parties to the reorganization. The petitioner admits that either one or the other was, but not both, and asserts that there were two reorganizations, one between Antitoxin and Cyanamid and one between Cyanamid and Laboratories.

The pertinent statute (Revenue Act 1928, § 112(i), 26 U.S.C.A. § 112 note) provides:

"(i) *Definition of Reorganization.* As used in this section and sections 113 and 115—

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation."

The Board construes (i) (2) as not all-inclusive, and quotes Regulations 74, art. 577, which says that it "simply enumerates certain cases with respect to which doubt might arise." The Commissioner does not quarrel with this interpretation (see his brief, page 28). The Board then says, after concluding that the reorganization itself was between Antitoxin and Laboratories, that Cyanamid was "so intimately connected with the reorganization" that it required no specific mention in the statute and was a party to the reorganization. There do not seem to be any cases directly in point. In Tulsa Oxygen Co. v. Commissioner, 18 B.T.A. 1283, cited by both sides, A corporation transferred its assets to C, D, and E, subsidiaries of B under a contract with C, for shares of stock in B, paid by D. The Board held that this was a tax-free reorganization, necessarily implying that B was a party thereto.

■ In the case at bar, A transferred its assets to C under a contract with B for stock in both B and C. Since we find no authority to the contrary, we agree with the Board that both Laboratories and Cyanamid were parties to the reorganization with Antitoxin. Under Nelson Co. v. Helvering, Commissioner, 296 U.S. 374, 56 S.Ct. 273, 80 L.Ed. 281, decided December 16, 1935 by the Supreme Court, Laboratories would quite clearly seem to be a party to the reorganization. Under the Tulsa Oxygen Case, supra, Cyanamid would appear also to be a party. Undoubtedly, there is the continuity of interest in the Antitoxin assets through acquisition of the stock in both companies which is stressed in Helvering v. Minnesota Tea Company, 296 U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284, decided December 16, 1936 by the Supreme Court.

The second question is whether the Board erred in not allowing an increased deficiency upon a different basis than the one stressed in the first amended answer.

The pertinent statute is Revenue Act 1928, § 272 (e), 26 U.S.C.A. § 272(e) and note: "(e) *Increase of Deficiency after Notice Mailed.* The Board shall have jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency, notice of which has been mailed to the taxpayer, and to determine whether any penalty, additional amount, or addition to the tax should be assessed— if claim therefor is asserted by the Commissioner at or before the hearing or a rehearing."

■ In regard to the corresponding section of the 1926 Act, section 274 (e), 44 Stat. 55, the Board has construed it to mean "that the prayer (for an increase) must have the support of specific claims in each case based on specific grounds." Cascade Milling Co. v. Commissioner, 25 B.T.A. 946. Cf. Moise v. Burnet (C.C.A.) 52 F.(2d) 1071. The two acts are substantially identical. In Cascade Milling Company, the Commissioner attempted to ask for an increase if any should be determined by the Board. This was ruled out. If this is no good, why should a claim for increased deficiency upon one ground support a finding for an increased deficiency on a totally different basis? The principle seems to be the same. The original claim for a deficiency was allowed, to the limit therein stated, upon a totally different basis, but not the claim for increased deficiency.

■ The last question is whether the Board erred in denying leave to file the second amended answer and in denying the

motion for review, reconsideration, and revision. The Board has a certain amount of discretion in allowing amendments, and under Steele-Wedeles Co. v. Commissioner (C.C.A.) 63 F.(2d) 541, we cannot say that the Board abused this discretion in denying leave to file the second amended answer. It was late in the proceedings. There is a question whether it came within the procedural time limits. The Board has the power to prescribe procedural rules. Revenue Act 1924, § 907 (a), as added by Revenue Act 1926, § 1000, 44 Stat. 107, carried through 1928 act (section 601 [26 U.S.C.A. § 611]. In accordance with this power the Board has promulgated rule 17 and rule 50, which read as follows:

"Rule 17. * * * Upon motion made, the Board may, in its discretion, at any time before the conclusion of the hearing, permit a party to the proceedings to amend. * * *"

"Rule 50. * * * Any hearing under this rule will be confined strictly to the consideration of the correct computation * * * and no argument will be heard upon or consideration given to the issues or matters already disposed of by such report or of any new issues. This rule is not to be regarded as affording opportunity for a rehearing or reconsideration."

Was the motion to file the second amended answer within these time limits? That is during the hearing? Helvering v. Edison Securities Corporation, 78 F.(2d) 85 (C.C.A.4), is a very similar case. The question concerned three transactions. The petitioner claimed that the first was not part of a tax-free reorganization, but agreed that the latter two were. On this basis the Commissioner assessed a deficiency of $68,791. The Board upheld the Commissioner as to the first, but on its own motion decided that the second transaction also was not part of a tax-free reorganization, but entered judgment under rule 50 limiting the computation to $68,791. Their decision would have increased the deficiency to about $100,000. The Commissioner petitioned for a rehearing and also presented a claim for an increased deficiency, both of which were denied by the Board on reasoning akin to that used in the present case. The Fourth Circuit remanded the case to the Board upon the principles, first, that the hearing continued until the final proceedings even into recomputation proceedings under rule 50; and, secondly, that, though ordinarily no new matter could be raised under proceedings under rule 50, where the decision of the Board gave rise to a question involving new matter, not to grant a rehearing is an abuse of discretion.

There are two ways in which we could uphold the decision of the Board. The first would be to openly agree with the principles of Helvering v. Edison Securities Corporation and say that the "hearing" did not extend to proceedings under rule 50. We could also distinguish that case, since in that case both parties were dissatisfied with the Board's decision and had presented cross-petitions for review; since the facts of the second transaction were admittedly not clear and the Fourth Circuit wanted these facts cleared up; and because there were certain deductions claimed by the taxpayer which had not been passed upon.

After consideration had of all questions involved, and finding ourselves in accord with the Tax Board, without further discussion, we limit ourselves to now affirming its order.