COMMISSIONER OF INTERNAL REVE-
NUE v. SUSSMAN.
No. 68.

Circuit Court of Appeals, Second Circuit.
April 3, 1939.

James W. Morris, Asst. Atty. Gen., and J. Louis Monarch and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., for petitioner.

Benjamin Mahler, of New York City, for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

Julius L. Sussman, hereafter called the taxpayer, owned eighteen and three-fourths per cent. of the capital stock of each of four affiliated corporations which, in 1927, sold all their assets to Elyria Iron & Steel Company for net cash of $704,774.-25 and 9,602 shares of the purchaser's common stock. Such cash and stock were forthwith distributed to the sellers' shareholders. In such distribution the taxpayer received $132,027.67 cash and 1,800 shares of Elyria stock. In his income tax return for 1927 he reported a capital gain from this transaction of $48,215.17, a figure obtained by deducting from the cash received what he considered to be the aggregate cost basis of his stock in the selling corporations, namely, $83,812.50. On auditing the return the Commissioner increased the taxpayer's capital gain by the sum of $85,758.96 and gave notice of a proposed deficiency assessment of $10,719.-88. Alleging errors in the commissioner's computation, the taxpayer appealed to the Board. Two of the taxpayer's contentions, resulting in a reduction of his capital gain to $71,948.10, were sustained, and a recomputation of tax was ordered pursuant to Rule 50. At the hearing on recomputation the Board redetermined the deficiency as $3,194.79. At that hearing and thereafter by motion for rehearing and reconsideration, which the Board denied, the commissioner urged that the fair market value of the 1,800 shares of Elyria stock received by the taxpayer (found by the Board to have been worth $46.50 per share) should be taken into account in computing the tax liability; but the Board determined the deficiency without reference to the value of Elyria stock. The commissioner asks us to reverse the decision and remand the case for computation on the basis of such value. The taxpayer denies that correct computation would take account of the value of the Elyria stock and argues further that in any event the commissioner's conduct of the case before the Board was such as to preclude him from using its finding of market value.

Assuming for the moment that correct computation of the tax liability is open for consideration, the commissioner is clearly right. The transfer by the selling corporations of all their assets for cash

and stock of the purchaser constituted a reorganization within the meaning of section 203(h) (1) of the Revenue Act of 1926, 44 Stat. 12, 14. Helvering v. Minnesota Tea Co., 296 U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284. The distribution of the cash and stock to the shareholders of the selling corporations was a liquidation taxable pursuant to section 201(c), 44 Stat. 10, 11, which provides that gain to the distributee shall be determined under section 202, but shall be recognized only to the extent provided in section 203. So it follows that the taxpayer's gain should be found by adding to the cash received the fair market value of Elyria stock distributed to him and deducting therefrom the aggregate cost basis of his shares in the liquidating corporations. This would result in a taxable gain of approximately $161,000. But such gain is "recognized," that is, taxable, only to the extent of the cash, namely, $132,027.67, by reason of section 203 (d) (1), 44 Stat. 12, 13. Since there is no express finding that the taxpayer surrendered his stock in the distributing corporations, he contends that the distribution he received was under section 203(c) rather than section 201(c). But it is very clear from his petition to the Board and from the stipulated facts that the distribution was considered by the parties as a "liquidation," and section 201(c) is controlling as to a distribution in liquidation.

The more doubtful question remains; namely, whether in view of the proceedings before the Board the correct tax liability can still be imposed. As mentioned above, the taxpayer computed his taxable gain by deducting from the cash received what he considered to be the cost basis of his shares in the liquidating corporations. The commissioner in determining the deficiency did not consider the cash received by the taxpayer or the value of the Elyria stock distributed to him, but apparently computed the capital gain by determining the book value of the assets of the selling corporations, deducting therefrom their capital stock, and charging as gain to the taxpayer 18¾% of the sum so found—that being the proportion of the stock held by him in the liquidating corporations. In his petition to the Board the taxpayer did not dispute the correctness of this method of computation but sought relief in certain particulars which it is unnecessary to enumerate. The answer of the commissioner merely denied the allegations of the petition and did not assert any new ground of tax liability. The memorandum opinion of the Board makes clear that it too did not depart from the original theory of the commissioner. The value of the Elyria stock was, therefore, not pertinent to the issues raised by the pleadings and decided by the Board. The finding that this stock had a market value of $46.50 per share was based upon testimony in depositions that came before the Board in the following manner: In addition to the taxpayer's appeal there were pending before the Board seven other cases involving the aforesaid sale to Elyria Iron & Steel Company. These eight cases were consolidated for hearing into two groups; one of five cases relating to the tax liability of the Mohegan Company (one of the sellers) and its four stockholders as transferees, and the other of three cases relating to the individual tax liability of taxpayer Sussman and two of his fellow stockholders who were in a like situation. At a hearing at which evidence was presented in all the cases, the commissioner applied for leave to take the depositions in question. The order granting such leave was entitled in all eight cases, but when the depositions were returned they were captioned with the title of the five cases consolidated into the Mohegan group and they were introduced into evidence in that group only. When the commissioner was preparing his brief in the second group of cases, he discovered the omission and obtained an ex parte order without notice to the taxpayer to correct the record by receiving the depositions in these cases also. Except for this order the Board would have had no evidence on which to base its finding of the fair market value of Elyria stock at the time of the distribution in liquidation. In his brief, and orally on the Rule 50 hearing, the commissioner claimed an increase in the taxpayer's deficiency by computing the capital gain as the difference between the cash received and the fair market value of the Elyria stock less the cost basis of the original shares, or, as he claimed during the hearing under Rule 50, in the alternative the gain should be recognized as taxable to the extent of the cash distribution alone. After the decision of the Board, in which it redetermined the deficiency in accordance with the commissioner's original theory, the commissioner moved for a rehearing. In his petition he conceded that the transaction involving the taxpayer's companies and the Elyria Com-

pany constituted a statutory reorganization and prayed that the Board should recompute the deficiency on the basis that the cash received by the taxpayer constituted a taxable gain to him. The Board denied the motion for a rehearing without opinion.

█ Technically, it would seem that the Board should not have received the depositions as evidence in the second group of cases without giving the taxpayers an opportunity to be heard in opposition. Rule 46 of the Board's Rules requires the officer taking a deposition to indicate in its caption the title of the cause in which it was taken. This rule was not complied with; nor had the depositions ever been offered as evidence in the second group of cases. Even if this was a mere oversight, as seems probable from the fact that the order granting leave to take them was entitled in all of the eight cases, the taxpayers should have had a chance to be heard as to whether the record should be corrected. Actually, as appears from the taxpayer's brief, it was only after the motion had been granted by the Board ex parte that a copy thereof was mailed to counsel for the taxpayer. In his reply brief submitted to the Board, the taxpayer objected to the granting of this motion and requested its withdrawal. But apart from all technical considerations as to the admission of these depositions in evidence, it is clear that the value of the Elyria stock was irrelevant to any issue raised by the pleadings. At no time did the commissioner seek to change his pleadings or move to amend them to conform to the proof. This he could have done under Rule 17 of the Board's Rules which provides that the Board may permit amended and supplemental pleadings. Indeed, it might have abused its discretion if it had failed to allow a requested amendment. Cf. International Banding Mach. Co. v. Commissioner, 2 Cir., 37 F.2d 660. But not having made such a motion, the contentions advanced in his brief with respect to the Elyria stock were not properly before the Board, since it has consistently held that it will not consider issues raised in brief or at the hearing but not mentioned in the pleadings. Dixie Manufacturing Co., 1 B.T.A. 641; Appeal of Weaver, 2 B.T.A. 709; Dastague v. Commissioner of Int. Rev., 19 B.T.A. 1324; North American Coal Corp. v. Commissioner of Int. Rev., 28 B.T.A. 807, 831. Moreover, these contentions were based upon an erroneous theory for they went so far as to say that the taxable gain was the amount of the cash plus the value of the Elyria stock less the cost basis of the original shares, thus disregarding section 203 as to the nonrecognition of gain resulting from the receipt of securities pursuant to a statutory reorganization. The commissioner urges that the contentions in his brief with respect to the Elyria stock constituted a claim for an increased deficiency within section 274(e), 44 Stat. 55, and thus authorized the Board to compute the correct tax liability. There are several answers to this contention. The assertion of such a claim would amount to the injection of a new issue into the proceedings, and since it was not properly pleaded the Board presumably would not consider it in accordance with its usual practice. Certainly, we could not say that it would abuse its discretion in failing to do so. Cf. Moise v. Burnet, 9 Cir., 52 F.2d 1071; Cascade Milling & Elevator Co. v. Commissioner, 25 B.T.A. 946. Secondly, the claim was based upon an erroneous theory, and consequently the Board could in its discretion refuse to consider it. Commissioner v. Fifth Avenue Bank, 3 Cir., 84 F.2d 787. The correct theory for the computation of the tax was finally advanced by the commissioner as an alternative during the hearing on recomputation under Rule 50, which provides that no consideration will be given by the Board to any new contentions upon such hearing. This constitutes a valid regulation by the Board of the practice in proceedings before it, and it therefore acted within its powers in not considering the commissioner's alternative claim, even though it was correct. Bankers' Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325. Indeed, it could not rightfully have done otherwise. See Davison v. Commissioner, 2 Cir., 60 F.2d 50; State Consol. Oil Co. v. Commissioner, 9 Cir., 66 F.2d 648.

█ The final question is whether the Board erred in denying the commissioner's motion for a rehearing. The granting or denial of such a motion is within the Board's discretion and is not subject to review except in clear cases of abuse. Bankers' Pocahontas Coal Co. v. Burnet, supra; Freeman-Hampton Oil Corporation v. Commissioner, 5 Cir., 65 F.2d 456; O'Rear v. Commissioner, 6 Cir., 80 F.2d 473. Such an abuse of discretion has been found in

cases where the Board has based its decision upon a theory of tax liability different from that urged by the parties in their pleadings and then has denied the commissioner's petition for a rehearing thus preventing him from claiming a greater deficiency. Helvering v. Edison Securities Corporation, 4 Cir., 78 F.2d 85; Commissioner v. Ray, 7 Cir., 88 F.2d 891. A similar abuse of discretion in the denial of a motion for rehearing might conceivably be found in a case where the evidence relied on by a party in support of his motion was not available to him before the Board had filed its findings of fact and opinion. Cf. Bankers' Pocahontas Coal Co. v. Burnet, supra, at page 313, 53 S.Ct. at page 150. But this is not such a case. Here the Board based its findings upon the theory set forth by the parties in their pleadings. The commissioner was at all times aware that the taxpayer had received Elyria stock as part of his share of the liquidation proceeds. On account of the commissioner's delay in presenting the correct theory of liability it was within the Board's discretion to deny the motion for rehearing in the interest of administrative convenience. See Bankers' Pocahontas Coal Co. v. Burnet, supra; Steele-Wedeles Co. v. Commissioner, 7 Cir., 63 F.2d 541; Commissioner v. Fifth Avenue Bank, 3 Cir., 84 F.2d 787.

Order affirmed.