## LAWRENCE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7583.

Circuit Court of Appeals, Seventh Circuit.

Nov. 15, 1941.

Frank C. Olive and Forman D. McCurdy, both of Indianapolis, Ind., for petitioner.

J. P. Wenchel, Bureau of Int. Revenue, of Washington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and Morton K. Rothschild, of Washington, D. C., for respondent.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The Commissioner determined a deficiency in Petitioner's income tax for the year 1932. This appeal is from a decision of the Board of Tax Appeals affirming the Commissioner's determination. The sole question is: Did Petitioner realize taxable income as a result of the exchange of his stock in White Star Motor Oil Company for stock in Socony-Vacuum Corporation, White Star Oil Company, Inc., and White Star Oil Corporation?

The Commissioner has developed several theories to show that Petitioner did realize taxable income as the result of the exchange, the first having as its basis the proposition that Socony-Vacuum Corporation, hereinafter referred to as Socony-Vacuum, was not a party to reorganization within the terms of Section 112(b)(3) and Section 112(i)(1) and (2) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, pages 511–514.[1] If Socony-Vacuum was not a party to the reorganization, then any Socony-Vacuum stock received by Petitioner constitutes "other property" within the meaning of Section 112(c)(1), and the Petitioner is taxable for the gain realized to the extent of the value of the Socony-Vacuum stock received by him. We assume, for the sake of the argument, that a statutory reorganization did take place among the companies involved other than Socony-Vacuum.

The Petitioner owned 100 shares of stock of White Star Motor Oil Company, an Indiana corporation. This company and four other operating Indiana oil companies will hereinafter be referred to as "Present Companies." M. O. S. C. (Motor Oil and Supply Co.), a Delaware corporation, was

---

[1] Pertinent portions of the Revenue Act of 1932, c. 209, 47 Stat. 169, are:

"§ 112. Recognition of Gain or Loss
* * * .

"(b) Exchanges Solely in Kind—* * *

"(3) Stock for stock on reorganization. No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization. * * *

"(c) Gain from Exchanges not Solely in Kind—(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property. * * *

"(i) Definition of Reorganization. As used in this section and sections 113 and 115—(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation) * * *

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation."

merely a holding company, owning stock in the Present Companies. The Present Companies combined with M. O. S. C. will hereinafter be referred to as "Predecessor Companies." A group of men representing the stockholders of Predecessor Companies will hereinafter be referred to as "Individual Parties."

On November 12, 1931, V. I. C. (Vacuum Investing Corporation), a Delaware corporation, M. O. S. C., and Individual Parties entered into an agreement pertaining to a "plan of reorganization." All the issued and outstanding stock of V. I. C. was owned by Vacuum Oil Co., Inc. All the issued and outstanding stock of Vacuum Oil Co., Inc. was owned by Socony-Vacuum.

The agreement of November 12, 1931 was superseded on January 28, 1932 by an amended agreement entered into by Socony-Vacuum, V. I. C., Individual Parties, and M. O. S. C. It was agreed that any action to be taken by Socony-Vacuum might be taken by its subsidiary, V. I. C. Pursuant to this agreement, the following steps were taken.

Individual Parties caused the White Star Oil Company, Inc., hereinafter called "Assignee," to be organized. V. I. C. caused the White Star Oil Corporation, hereinafter called "New Corporation," to be organized.

On February 29, 1932, the following action was taken: The Present Companies transferred their assets to Assignee, which assumed the liabilities of the Present Companies and issued its entire capital stock of 7,320 shares to the stockholders of Predecessor Companies. New Corporation issued 9,070 shares of its capital stock, its entire issue, to Assignee in exchange for all the assets of Assignee. Assignee delivered to V. I. C. 1,750 shares of stock of New Corporation for $175,000, which Assignee delivered to a trustee for the purpose of paying liabilities of Assignee. The remaining 7,320 shares of stock of New Corporation were delivered by Assignee to Individual Parties as trustees for the former stockholders of Predecessor Companies, and these shares were disposed of as follows: 5,250 shares were transferred to V. I. C. for 53,011 shares of stock of Socony-Vacuum, which were delivered to Individual Parties and by them to the former stockholders of Predecessor Companies; 2,070 shares were deposited in escrow, with Socony-Vacuum having an option to purchase them within a certain time. The escrow agent delivered certificates of interest to the former shareholders of Predecessor Companies. Subsequently, all Predecessor Companies, except one, kept alive to preserve the "White Star" name, were dissolved.

On February 29, 1932 Socony-Vacuum had issued and outstanding 31,799,157 shares of its common stock.

The 53,011 shares of Socony-Vacuum stock delivered by V. I. C. to Individual Parties were purchased through a brokerage firm on the New York Stock Exchange for $524,999.13, furnished by Vacuum Oil Company, Inc., and the latter corporation debited the account of V. I. C. in said amount. The $175,000 delivered by V. I. C. to Assignee was likewise furnished by Vacuum Oil Company, Inc.

Neither Socony-Vacuum nor V. I. C. received any of the assets of Predecessor Companies. Socony-Vacuum did not acquire any of the stock of New Corporation.

As a result of the reorganization, Petitioner received stock in Assignee, a certificate of interest representing 13 shares of stock in New Corporation, and 331.642 shares of stock in Socony-Vacuum.

The Board of Tax Appeals based its decision on Groman v. Commissioner, 302 U.S. 82, 58 S.Ct. 108, 82 L.Ed. 63. In the Groman case, "Glidden," a corporation, entered into an agreement with the stockholders of "Indiana," another corporation. Pursuant to this agreement "Glidden" caused a new corporation, "Ohio," to be organized, and acquired its common stock. The stockholders of "Indiana" transferred all of their stock in that corporation to "Ohio" in exchange for prior preference stock of "Ohio," prior preference stock of "Glidden," and cash. "Indiana" then transferred its assets to "Ohio" and was dissolved. The Supreme Court held that since "Glidden" received nothing from the shareholders of "Indiana," the exchange being between "Indiana" stockholders and "Ohio," "Glidden" was not a party to the reorganization. The assets of "Indiana" were acquired by "Ohio." The stock received by the "Indiana" shareholders was stock in "Glidden." Hence, the interest of the stockholders in "Indiana" did not continue to be definitely represented in substantial measure in a new or different corporation. The only connection between the original interest and the new interest existed in the fact that "Glidden" owned the common stock of "Ohio." The court

held that this indirect connection did not satisfy the requirements of the Revenue Act.

It was contended that "Ohio" was the alter ego of "Glidden;" that "Glidden" was the principal and "Ohio" the agent. The court rejected this argument, saying that to disregard the corporate entity would be to ignore the purposes of the statute.[2] It was held that the "Glidden" stock was "other property" within the meaning of the statute.

The Petitioner attempts to distinguish this case from the Groman case on the ground that Socony-Vacuum was bound by the agreement of January 28, 1932 to purchase 5,250 shares of New Corporation stock, and the fact that Socony-Vacuum chose to have a subsidiary pay for these shares and receive them is immaterial. Petitioner points to the fact that in the Groman case the contract contemplated that the "Indiana" stock and assets be transferred directly to "Ohio." We fail to see merit in Petitioner's argument. The crux of the decision in the Groman case was the lack of continuity between the "Indiana" stockholders' interest in that company and their interest subsequently acquired in "Glidden." Helvering v. Bashford, 302 U.S. 454, 58 S.Ct. 307, 82 L.Ed. 367; United Light & Power Co. v. Commissioner, 7 Cir., 105 F.2d 866, 875. Here, Socony-Vacuum might have received the New Corporation stock, but it did not.

The cases cited by Petitioner to sustain his position that Socony-Vacuum was a party to the reorganization cannot, in the light of the Groman case, be regarded as authorities. Tulsa Oxygen Co. v. Commissioner, 18 B.T.A. 1283, and Commissioner v. Fifth Avenue Bank of New York, 3 Cir., 84 F.2d 787, were decided prior to the Groman decision. Schuh Trading Company v. Commissioner, 7 Cir., 95 F.2d 404, distinguished the Groman case on the ground that the "Indiana" stockholders received nothing from "Glidden." A statement to this effect in the original opinion in the Groman case was erroneous and was corrected by the Supreme Court, Groman v. Commissioner, 308 U.S. 654, 58 S. Ct. 108.

Since Socony-Vacuum received neither the assets of the Predecessor Companies nor the stock of New Corporation, there is no continuity between the interest Petitioner had as a stockholder in the White Star Motor Oil Company and the interest he acquired as a stockholder in Socony-Vacuum, except insofar as Socony-Vacuum owned all the issued and outstanding stock in V. I. C. This indirect interest which Petitioner retained in the assets of the Present Companies is, under the rule of the Groman case, not sufficient to satisfy the requirement of the statute. Continuity of interest is lacking.

We hold that Socony-Vacuum was not a party to the reorganization; that the Socony-Vacuum stock received by Petitioner constituted "other property" within the meaning of Section 112(c)(1); and that under this section Petitioner is taxable for gain realized to the extent of the value of the Socony-Vacuum stock he received. Since the value of the Socony-Vacuum stock received by Petitioner exceeds the gain determined by the Commissioner, the entire gain is taxable. Other questions raised by the Commissioner need not be considered.

The decision of the Board of Tax Appeals is affirmed.

---

[2] The Groman case has been adversely criticized on the ground that it fails to effectuate the purpose of the Revenue Act. See 49 Yale L.J. 1079, 1085, et seq. This question, however, is one to be determined by Congress or the Supreme Court, not by this court.